# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00257-CV

---

### C. L. and R. H., Appellants

### v.

### Texas Department of Family and Protective Services, Appellee

---

### FROM THE 146TH DISTRICT COURT OF BELL COUNTY
### NO. 23DFAM338419, THE HONORABLE DALLAS SIMS, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

C.L. (Father) and R.H. (Mother) appeal the trial court's Decree of Termination, which terminates their parental rights to their daughter, H.L. (Child). Father challenges the findings made against him under termination statutory predicate grounds Paragraphs (D), (E), (N), and (Q) and under the statutory best-interest ground. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (N), (Q), (2). In contrast, Mother's attorney on appeal has filed an *Anders* brief, concluding that Mother's appeal is frivolous and without merit. *See Anders v. California*, 386 U.S. 738, 744 (1967); *In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (per curiam) (approving use of *Anders* procedure in appeal from judgment terminating parental rights).

We mostly reject Father's arguments, concluding that the evidence was sufficient under Paragraph (E) and best interest but also concluding that the evidence was factually insufficient under Paragraph (D). Otherwise, Mother's brief meets the requirements of *Anders* by

presenting a professional evaluation of the record and demonstrating why there are no arguable grounds to be advanced on appeal. *See* 386 U.S. at 744; *Taylor v. Texas Dep't of Protective & Regul. Servs.*, 160 S.W.3d 641, 646–47 (Tex. App.—Austin 2005, pet. denied). We thus modify the Decree to delete the Paragraph (D) finding made against Father and affirm the Decree as modified.

## BACKGROUND

When she was born, Child, and Mother as well, had methamphetamine in her system. She was only 11 months old at the time of trial. Soon after Child's birth, the Department stepped in to pursue an emergency removal, which was granted, and eventually placed Child in foster care. Father was not in the picture—he was incarcerated when Child was born and has remained so ever since. At the time of trial, he was awaiting transfer from a county jail to TDCJ to serve a felony sentence. Child stayed in the foster placement for about nine and a half months. After DNA confirmed that Father was Child's parent, the Department moved Child's placement to her paternal grandfather's home, where he lives with his current partner. The Department prepared Family Service Plans for both Mother and Father, and Department personnel explained to both parents that they needed to comply with the services required in the Plans for Child to be returned to their care. Both Plans were made orders of the trial court. Father did not complete his Plan because most or all of its required services were not available in the facility where he was incarcerated. Mother did not complete most of what her Plan required of her. For example, she tested positive for illegal drugs during this suit, missed many of the Plan-required drug tests, and failed to maintain stable housing or employment.

2

The Department sought termination of each parent's parental rights to Child and tried those claims to the bench. The testifying witnesses were the Department caseworker, Father's mother, and Child's initial foster placement. Also, Child's guardian *ad litem* offered her recommendation in support of the Department's position. The trial court ultimately rendered judgment terminating each parent's rights, making findings against Father under predicate-ground Paragraphs (D), (E), (N), and (Q); against Mother under predicate-ground Paragraphs (D), (E), (N), and (O); and against each parent under the statutory best-interest requirement. Both parents now appeal.

**FATHER'S APPEAL**

Father challenges the legal and factual sufficiency of the evidence supporting the findings made against him under the two elements of termination of parental rights—the statutory predicate ground and the best-interest ground. To terminate parental rights, the Department must prove one of the statutory predicate grounds and that termination is in the best interest of the child. *See* Tex. Fam. Code § 161.001(b)(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). It must prove both elements by clear and convincing evidence. *See* Tex. Fam. Code § 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007; *accord In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002).

Legal-sufficiency review of the evidence to support termination requires reviewing all the evidence in the light most favorable to the finding under attack, and considering undisputed contrary evidence, to decide whether a reasonable factfinder could have formed a firm belief

3

or conviction that the finding was true.  *See In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). "Factual sufficiency, in comparison, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *Id.* at 631.  "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.*  When reviewing the evidence, we must "provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014).

**I.      The evidence was sufficient to support the finding against Father under statutory predicate ground Paragraph (E) but factually insufficient under Paragraph (D).**

Father first challenges the findings made against him under statutory predicate grounds Paragraphs (D), (E), (N), and (Q), contending that the evidence was legally and factually insufficient to support each finding.  "To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam).  But because of the potential collateral consequences for a parent of a Paragraph (D) or (E) finding and the dictates of due process, when on appeal a parent has presented the issue, "an appellate court that denies review of a [Paragraph] (D) or (E) finding deprives the parent of a meaningful appeal and eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children." *Id.* at 235.  "We often conduct evidence-sufficiency reviews under both [Paragraphs (D) and (E)] simultaneously when, as here, the evidence relevant under each is interrelated." *M.L. v.*

4

*Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00541-CV, 2023 WL 2025710, at *3 (Tex. App.—Austin Feb. 16, 2023, no pet.) (mem. op.).

Paragraph (D) applies when a parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(D). Paragraph (E) applies when a parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id.* § 161.001(b)(1)(E). For these purposes, "'[e]ndanger' means 'to expose to loss or injury; to jeopardize.'" *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) (quoting *Texas Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). Although "endanger" means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury," *id.* (quoting *Boyd*, 727 S.W.2d at 533), or even that the conduct happen in the child's presence, *Pruitt v. Texas Dep't of Fam. & Protective Servs.*, No. 03-10-00089-CV, 2010 WL 5463861, at *4 (Tex. App.—Austin Dec. 23, 2010, no pet.) (mem. op.). *See also A.S. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-23-00658-CV, 2024 WL 1587046, at *5 (Tex. App.—Austin Apr. 12, 2024, no pet.) (mem. op.) ("Father's illegal-drug use and repeated conduct leading to incarceration still exposed Child to jeopardy and loss even if Father did not do those things while around Child."). "Endangerment does not have to be established as an independent proposition, but can be inferred from parental misconduct alone," and courts may look to conduct "before the child's birth and both before and after the child has been removed by the Department." *Pruitt*, 2010 WL 5463861, at *4. "A factfinder may infer endangerment from 'a course of conduct' that presents substantial risks to the child's physical or emotional well-being," and "[t]hose risks can

5

be developed by circumstances arising from and surrounding a parent's behavior." *In re R.R.A.*, 687 S.W.3d 269, 277 (Tex. 2024). "Conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being." *Pruitt*, 2010 WL 5463861, at *4.

Important under Paragraph (E) is whether the endangerment of the child's well-being was the direct result of a person's conduct, including acts, omissions, or failures to act. *See T.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00174-CV, 2021 WL 4692471, at *6 (Tex. App.—Austin Oct. 8, 2021, pet. denied) (mem. op.); *In re J.F.-G.*, 612 S.W.3d 373, 382 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304 (Tex. 2021). "Termination under subsection (E) requires more than a single act or omission, and the Department must show a voluntary, deliberate, and conscious course of conduct by the parent, considering a parent's actions both before and after the child was removed from the home." *T.M.*, 2021 WL 4692471, at *6.

Much of the Department's case against Father was evidence of his incarceration and criminal history. Although "'imprisonment will not, standing alone, constitute engaging in conduct which endangers the emotional or physical well-being of a child,' . . . incarceration does support an endangerment finding 'if the evidence, including the imprisonment, shows a course of conduct which has the effect of endangering'" the child's physical or emotional well-being. *In re J.F.-G.*, 627 S.W.3d 304, 312–13 (Tex. 2021) (quoting *Boyd*, 727 S.W.2d at 533-34). "A parent's criminal history—taking into account the nature of the crimes, the duration of incarceration, and whether a pattern of escalating, repeated convictions exists—can support a finding of endangerment." *Id.* at 313. The parent's "[l]engthy incarceration presents a risk of endangerment to the child's well-being" partly because the parent's resulting absence from the child's life can damage the child's emotional well-being. *See id.* at 314. Thus, evidence of a crime resulting in

incarceration, and especially of "multiple criminal episodes of escalating seriousness," "together with the duration and consequences of the incarceration, is relevant when the resulting abandonment presents a risk . . . to a child's physical or emotional well-being." *Id.* at 315.

The evidence here showed the following criminal history for Father: (1) a 2005 arrest for the offense of theft of property valued at less than $500 but more than $50, which did not lead to any conviction[1]; (2) 2009 and 2010 arrests for possession of marijuana of less than two ounces,[2] with the 2010 charge ultimately dismissed; (3) a 2010 arrest for possession of marijuana of more than two ounces but not more than four,[3] leading to nine months' probation; (4) a 2018 arrest for manufacturing or delivering a controlled substance in Penalty Group 1 of at least four grams but less than 200 grams,[4] leading to five years' probation; (5) a 2019 arrest for possession of a controlled substance in Penalty Group 1 of at least four grams but less than 200 grams,[5] which led to the prosecutor's rejecting the charge without pre-trial diversion; (6) a 2020 arrest for the same level of possession offense; (7) a 2020 arrest for harassment and evading arrest,[6] leading to

---

[1] This offense was at the time a Class B misdemeanor, which can be punished by jail time not to exceed 180 days. *See* Act of May 29, 1995, 74th Leg., R.S., ch. 318, § 9, sec. 31.03(e)(2)(A)(i), 1995 Tex. Gen. Laws 2734, 2737–38 (amended 2015) (offense then Class B misdemeanor); Tex. Penal Code § 12.22 (applicable range of punishment).

[2] A Class B misdemeanor. *See* Tex. Health & Safety Code § 481.121(b)(1).

[3] A Class A misdemeanor, which level of offense can be punished by jail time not to exceed a year. *See* Tex. Health & Safety Code § 481.121(b)(2); Tex. Penal Code § 12.21.

[4] A first-degree felony, which can be punished by imprisonment for life or for a term of not more than 99 years or less than five. *See* Tex. Health & Safety Code § 481.112(d); Tex. Penal Code § 12.32.

[5] A second-degree felony, which can be punished by imprisonment for any term of not more than 20 years or less than two. *See* Tex. Health & Safety Code § 481.115(d); Tex. Penal Code § 12.33.

[6] Harassment is a Class B misdemeanor, and evading arrest is a Class A misdemeanor. *See* Act of May 27, 2009, 81st Leg., R.S., ch. 1400, § 4, sec. 38.04(b), 2009 Tex. Gen. Laws 4385, 4385–86 (amended 2011) (evading arrest); Tex. Penal Code § 42.07(c) (harassment).

dismissal of the evading-arrest charge but 30 days' incarceration for the harassment charge; (8) a 2021 arrest for possession of a controlled substance in either Penalty Group 1 or 1-B of less than a gram[7]; and, (9) as of April 2024, a pending felony-level charge for possession of a controlled substance.[8]  The evidence also showed that Father was incarcerated in the Williamson County jail on the drug charge when Child was born.  Around the time of trial, he was to be transferred to a TDCJ facility to serve a different sentence, for second-degree-felony theft or fraud.  When the caseworker would ask him how long his sentence was, he would not answer but instead referred to hoping for a quick parole.[9]

The evidence thus showed "multiple criminal episodes of escalating seriousness" by Father, *see J.F.-G.*, 627 S.W.3d at 315, leading to an incarceration that the trial court could consider to be lengthy because Father refused to say how long it would last.  A likely result of Father's incarceration had the Department not stepped in would be that Child would be left in Mother's care.  *See id.* (evidence of parent's incarceration is relevant under Paragraph (E) "when the resulting abandonment presents a risk . . . to a child's physical or emotional well-being").  Being left in Mother's care would endanger Child's physical or emotional well-being for several reasons.  Mother has criminal history of her own, including incarceration.  She has long struggled with addiction, including illegal-drug use during this suit[10] and extended methamphetamine use,

---

[7]  A state jail felony, which can be punished by a jail term of at least 180 days but not more than two years.  *See* Tex. Health & Safety Code § 481.115(b); Tex. Penal Code § 12.35.

[8]  The record is unclear about whether this pending charge is connected to the 2021 arrest.

[9]  Other evidence showed that it was unknown when Father would be released from incarceration.

[10]  Helping to show Mother's drug use during the suit was evidence of many missed drug tests required by the Department.  *See T.D. v. Texas Dep't of Fam. & Protective Servs.*, 683 S.W.3d 901, 914 (Tex. App.—Austin 2024, no pet.) ("The factfinder may infer from a parent's missing

all causing her to lack either a robust support system or consistent housing. *See R.R.A.*, 687 S.W.3d at 277–78 (parent's course of conduct in using drugs helped show endangerment of children when parent used marijuana daily; allowed child to stay alone with other parent, who herself used drugs; missed required drug tests; and tested positive for drugs during suit to terminate parent's rights, explaining *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009)). Child was born with methamphetamine in her system from Mother. And Mother did not complete all tasks required of her in her Family Service Plan, which had been made an order of the trial court. *See A.S.*, 2024 WL 1587046, at *4 ("[A] parent's failure to participate in a Department-requested Family Service Plan can be considered in endangerment analysis."). Specifically under her Plan, Mother did not demonstrate sobriety—she missed many required drug tests—or the ability to care for Child,[11] she did not visit with Child regularly, she was discharged unsuccessfully from therapy for lack of attendance, and she did not maintain stable housing or a job and so cannot meet Child's basic needs. Child also has advanced medical needs, including "multiple health scares with having a hemorrhage in her heart," as explained by the caseworker; needing plastic surgery for a deformity in her ear; and frequent infections from needing tubes put in her ears and from a weakened immune system. The evidence showed that Father would know about the deficiencies in Mother's ability to care for a child because the two had been "best friends for a long time."

Father's increasingly serious criminal conduct, leading to a lengthy incarceration, created substantial risks to Child's physical or emotional well-being because it resulted in Child being left in Mother's care. Given all this, we conclude that a reasonable factfinder could have

---

Department-requested illegal-drug tests during a parental-rights-termination suit that the tests missed would have come up positive.").

[11] Mother has an older child, but Mother's father is the one taking care of that child.

formed a firm belief or conviction that Paragraph (D) and (E) findings against Father were true, making the evidence legally sufficient to support those findings. *See A.C.*, 560 S.W.3d at 630–31.

As for factual sufficiency, and on the other side of the evidentiary ledger, some evidence supported Father's position against the Department's request for termination under Paragraphs (D) or (E).[12] Specifically, some evidence showed that Father's relatives quickly stepped in to provide a home for Child when it was DNA-confirmed that Father was Child's parent. The evidence showed that they want to keep Child in the family. It was undisputed, however, that Father had the criminal history detailed above and that no one was certain when he would be released from incarceration. With him incarcerated, Child would have been left in Mother's endangering care. We conclude that under Paragraph (E), the evidence against the Department's position was not so significant that the factfinder could not have formed a firm belief or conviction that a Paragraph (E) finding was true. *See id.* at 631.

But we cannot say the same under Paragraph (D). Recall that it involves the parent's "knowingly plac[ing] or knowingly allow[ing] the child to remain in conditions or surroundings" endangering the child. *See* Tex. Fam. Code § 161.001(b)(1)(D). The Department's

---

[12] We disagree with the Department's position that Father has waived his evidence-sufficiency challenges by inadequate briefing. *See* Tex. R. App. P. 38.1(i). His appellate brief states his legal- and factual-sufficiency challenges, provides argument for why the Department's evidence fails to prove what the statute requires, and marshals the evidence that he believes would have prevented a reasonable factfinder from forming any firm belief or conclusion about the truth of the findings that he attacks on appeal. *See Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732–33 (Tex. 2020) (stating both, "[B]riefs must also 'be liberally, but reasonably, construed so that the right to appeal is not lost by waiver,'" and, "[C]ourts should hesitate to resolve cases based on procedural defects and instead endeavor to resolve cases on the merits," and explaining why factual-sufficiency issue there was similarly adequately briefed (quoting *Horton v. Stovall*, 591 S.W.3d 567, 569 (Tex. 2019) (per curiam))).

only representative to testify at trial, its caseworker, made an admission directly contrary to the Department's position under Paragraph (D) in this exchange:

> Q. Okay. And he's been—he was incarcerated—excuse me—four to five months prior to [Child]'s birth, correct?
>
> A. I'm unsure prior to the birth because I wasn't assigned to the case, but I know when the child was born he was incarcerated.
>
> Q. Okay. And so, therefore, he—you guys are not accusing him of neglecting or abusing [Child], correct?
>
> A. Correct.
>
> Q. Okay.
>
> A. He's not the alleged perpetrator.
>
> *Q. Okay. And you guys are not alleging that he placed her in a dangerous situation, correct?*
>
> *A. Correct.*

(Emphasis added.) This admission is in effect a direct statement that Father *did not* violate Paragraph (D) by knowingly placing or knowingly allowing Child to remain in endangering conditions or surroundings. The caseworker was the one witness who, by far, offered the testimony most damaging to Father's position in the suit. And *even she* did not agree with the view that Father had violated Paragraph (D).[13] We hold that no reasonable factfinder could ignore this caseworker's testimony directly contrary to the Department's Paragraph (D) position and thus that the evidence against the Paragraph (D) finding—this admission plus the evidence showing

---

[13] Father's counsel said in closing argument: "You heard the testimony from the caseworker, their witness, that they're not alleging that [Father] placed the child in danger or was— caused the child neglect or abuse or placed her in a position where she was neglected and abused."

Father's relatives' care for Child—was so significant that the factfinder could not have formed a firm belief or conviction that the finding was true. *See A.C.*, 560 S.W.3d at 631; *see also T.M. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00174-CV, 2021 WL 4692471, at *7–8 (Tex. App.—Austin Oct. 8, 2021, pet. denied) (mem. op.); *In re H.J.Y.S.*, No. 10-19-00325-CV, 2019 WL 8071614, at *4–5 (Tex. App.—Waco Feb. 26, 2019, pet. denied) (mem. op.).

Because the Paragraph (E) ground was supported by legally and factually sufficient evidence and only one meritorious predicate ground is needed when affirming a judgment terminating parental rights, we need not reach the rest of Father's predicate-ground issues. *See N.G.*, 577 S.W.3d at 232. Father's remedy for the factual insufficiency of the Paragraph (D) ground is a modification of the trial court's Decree to strike the Paragraph (D) finding made against him. *See In re M.P.*, 639 S.W.3d 700, 704 (Tex. 2022) (per curiam). We thus overrule Father's predicate-ground issues in part and sustain them only to the extent of the factual insufficiency of the evidence under Paragraph (D).

## II.    The evidence was sufficient to support the finding against Father under the statutory best-interest requirement.

The rest of Father's appeal concerns the legal and factual sufficiency of the evidence to support the best-interest finding made against him. When reviewing best-interest findings, factors that courts consider include (1) the child's wishes, (2) the child's emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the parent's conduct that may indicate that the existing parent–child relationship is improper, and (9) any excuses for the parent's conduct. *In re J.W.*, 645 S.W.3d 726, 746 (Tex.

12

2022) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)).  This list is not exhaustive, not all factors need be proven to determine best interest, and proof of only one factor may in a particular factual context support termination.  *See M.L. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00541-CV, 2023 WL 2025710, at *5 (Tex. App.—Austin Feb. 16, 2023, no pet.) (mem. op.); *S.C. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00039-CV, 2020 WL 3892796, at *16 (Tex. App.—Austin July 10, 2020, no pet.) (mem. op.).  Evidence probative under the statutory predicate grounds may also be probative of best interest.  *A.C.*, 560 S.W.3d at 631–32.

The evidence recounted above about the Paragraph (E) finding is relevant to best interest.  That evidence shows that Father will stay incarcerated for a long time while Child is in her tender years and needing advanced medical care.  The caseworker testified that Father cannot meet Child's basic needs, "has not provided any type of support to" Child, and "has not displayed the ability to put the needs of [Child] before his own" because of the continued incarceration.  By contrast, other evidence showed that Child is forming a bond with Father's father and his partner now that she is placed with them and that they want to adopt her.  At their home, Child "is currently on track for each of her developmental milestones," and the Department had no concerns that the placement could meet Child's advanced medical needs.  The evidence allowed the trial court, as factfinder, to draw reasonable inferences for the placement family as best serving Child's interests.  *See A.S.*, 2024 WL 1587046, at *6; *S.S. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-23-00608-CV, 2024 WL 131757, at *7 (Tex. App.—Austin Jan. 12, 2024, no pet.) (mem.

op.).  We see in the evidence that at least *Holley* factors one,[14] two, three, four, seven, and eight support termination.

For his part, Father relies on testimony by his mother that she was willing to be Child's placement and on both her testimony and other evidence tending to show that Father's parental rights need not be terminated for his family members to continue to care for Child.  But evidence allowed a reasonable factfinder to infer that it was the family's interest in caring for Child—rather than Father's arranging for their support—that caused the family members to take Child in.  That evidence was the caseworker's testimony that the family wanted to keep Child in their family after learning of Father's parentage.  The evidence also showed that by his incarceration and consistent criminal history, Father cannot "remain gainfully employed" and cannot "provide a stable home" for Child, and those matters support terminating his parental rights, *see In re D.C.*, 128 S.W.3d 707, 717 (Tex. App.—Fort Worth 2004, no pet.), because "safe, stable, and *permanent* home[s]" for children when that outcome "can be obtained only by adoption" supports terminating the parent's rights, *see In re S.H.A.*, 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc).

In all, we conclude that the evidence was legally and factually sufficient to support the best-interest finding made against Father.  *See A.C.*, 560 S.W.3d at 630–31.  We thus overrule the remainder of his appellate issues.

---

[14] *See In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (evidence supports termination under first factor even when child is too young to express wishes when evidence shows good care by foster placement and bonding with them compared with child's having spent minimal time with parent), *overruled in part on other grounds by In re L.C.L.*, 599 S.W.3d 79, 85 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (en banc), *disapproved of by In re R.R.A.*, 687 S.W.3d 269, 278 n.45 (Tex. 2024).

## MOTHER'S APPEAL—*ANDERS* BRIEF

In connection with the *Anders* brief that Mother's appellate attorney filed, the attorney has certified to this Court that he has provided Mother with copies of the *Anders* brief, the clerk's record, and the reporter's record and that he has advised her of her right to file a *pro se* brief. To date, Mother has not filed a *pro se* brief. The Department has a filed a response stating that it will not file a brief regarding Mother's appeal unless requested by this Court.

Upon receiving an *Anders* brief, we must conduct a full examination of the record to determine whether the appeal is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80 (1988); *Taylor*, 160 S.W.3d at 647. We have conducted an independent review of the entire record, including the *Anders* brief submitted on Mother's behalf, and have found nothing in the record that might arguably support an appeal. Our review included the trial court's endangerment findings against Mother under Paragraphs (D) and (E), and we have found no nonfrivolous issues that could be raised on appeal with respect to those findings. *See N.G.*, 577 S.W.3d at 237. We agree that Mother's appeal is frivolous and without merit.

**CONCLUSION**

We modify the trial court's Decree of Termination to strike the Paragraph (D) finding made against Father and affirm the Decree as modified. Mother's counsel's motion to withdraw is denied.[15]

_____

Chari L. Kelly, Justice

Before Justices Baker, Triana, and Kelly

Modified and, as Modified, Affirmed

Filed:   October 11, 2024

---

[15] The Supreme Court of Texas has held that the right to counsel in suits seeking the termination of parental rights extends to "all proceedings [in that Court], including the filing of a petition for review." *In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (per curiam). Accordingly, counsel's obligation to Mother has not yet been discharged. *See id.* If after consulting with counsel, Mother desires to file a petition for review, her counsel should timely file with the Supreme Court "a petition for review that satisfies the standards for an *Anders* brief." *See id.* at 27–28.